UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

CATHERINE ROBINSON,

        Plaintiff,                          Case No.  1:15-cv-509

v.

                                        HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,

———————————————————/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).   Plaintiff Catherine Robinson seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who

is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 61 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.35, 62.) She successfully completed high school, and was previously employed as a financial customer service representative. (PageID.64, 86.) Plaintiff applied for benefits on August 1, 2012, alleging that she had been disabled since June 1, 2010, due to Parkinson's disease, arthritis, degenerative disc disease, type II diabetes, hip replacements, heart surgery, aortic valve replacement, bypass valve replacement, a herniated disc, and high blood pressure. (PageID.94–95,

2

104–05,182–93.)  Plaintiff's applications were denied on November 30, 2012, after which time she requested a hearing before an ALJ.  (PageID.93, 103, 117–38.)  On October 17, 2013, Plaintiff appeared with her counsel before ALJ Nicholas Ohanesian for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE).  (PageID.53–90.)  In a written decision dated November 27, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.35–52.)  On March 26, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter.  (PageID.24–29.)  Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).   At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Ohanesian determined Plaintiff's claim failed at the fourth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2010, the alleged disability onset date.  (PageID.40.)  At step two, the ALJ determined Plaintiff had the following severe impairments: (1) aortic valve disorder; (2) coronary artery disease; (3) mitral valve disorder; (4) tricuspid valve disorder; (5) type II diabetes mellitus; (6) hyperlipidemia; (7) hypertension; (8) obesity; (9) left hip degenerative joint disease status post total arthroplasty; (10) end state right hip arthritis status post total hip arthroplasty; and (11) degenerative disc disease of the cervical spine.  (PageID.40–42.)  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments.  (PageID.42–44.)  At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps or stairs; can occasionally climb ladders, ropes or scaffolds, balance, stoop, kneel, crouch, and crawl.  The claimant should avoid concentrated exposure to extreme cold, extreme heat, humidity, and hazardous machinery and unprotected heights.

4

(PageID.44.) Continuing with the fourth step, the ALJ determined that Plaintiff was able to perform her past relevant work as a financial customer service representative. The ALJ determined that the work did not exceed the exertional level of the RFC. (PageID.47.) Having made his determination at step four, the ALJ ended his analysis and entered a finding that Plaintiff had not been under a disability at any point from June 1, 2010, through November 27, 2013. (PageID.47–48.)

## DISCUSSION

After a review of Plaintiff's Statement of Errors, the Court finds Plaintiff raises the following claims of error in her brief:

1.   The ALJ erred at step three in failing to find she met the requirements of Listing 1.02A;

2.   The ALJ failed to consider all of Plaintiff's impairments;

3.   The ALJ failed to account for Plaintiff's limitations in concentration, persistence, and pace in the RFC; and

4.   The ALJ erred at step four in determining Plaintiff could perform her past relevant work.

(PageID.982–83.) The Court will discuss the issues below.

**1.   Plaintiff Failed to Satisfy Her Burden at Step 3.**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. At step three of the sequential disability analysis, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. Here, the ALJ concluded that Plaintiff's impairments did not meet or medically equal any listed impairment. (PageID.42–44.) In so doing, the ALJ identified several specific listings, including Listing 1.02.

Plaintiff claims, however, that the ALJ's analysis regarding Listing 1.02A was so "cursory and lacking in substantive analysis" that a reviewing Court could not perform a proper judicial analysis. (PageID.985–86.)  The Court disagrees.

First, neither Plaintiff nor her counsel argued to the ALJ either in a pre-hearing brief or at the hearing that she satisfied the requirements of Listing 1.02.  While it is true that counsel stated Plaintiff "potentially" met Listing 1.02, (PageID.60) the Court finds this equivocal statement falls short of specifically presenting an argument she met the Listing's requirement to an ALJ, especially since it was unaccompanied by any further argument. Indeed, counsel's argument centered on claiming that there were no jobs Plaintiff could perform at steps four and five. (PageID.60.)  Thus, this is not a circumstance in which the ALJ failed to address an argument with which he was specifically presented.  *See, e.g., Oldenkamp v. Comm'r of Soc. Sec.*, No. 1:13-CV-1303, 2015 WL 505805, at *5 n.2 (W.D. Mich., Feb. 6, 2015) (noting that a relevant issue when assessing an ALJ's step three analysis is whether the claimant presented to the ALJ a claim or argument that he satisfied a particular listing).

In any event, the Sixth Circuit has concluded that the failure by an ALJ to provide extensive reasoning at step three is not, by itself, grounds for relief.  *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) ("we decline Forrest's invitation to extend *Wilson* to require remand when the ALJ provides minimal reasoning at step three of the five-step inquiry, especially where [the Plaintiff] did not argue at the hearing that he met a particular listing").  As the *Forrest* court further observed, the ALJ's failure to provide detailed analysis at step three is no basis for relief if the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Id.* at 366.  There is "no need to require the ALJ to spell out every fact

a second time." *Id.* Here, the ALJ discussed the medical record in detail and articulated ample support for his determination that Plaintiff did not satisfy Section 1.02. (PageID.44–47.). While the decision may not be organized as Plaintiff would prefer, such is not a basis for disturbing the ALJ's conclusion.

Furthermore, the *Forrest* court recognized that any error with respect to the ALJ's step three analysis is harmless unless a claimant can establish that she satisfied the listing in question. *Id.* The medical record in this case belies any argument by Plaintiff that she satisfies the listing. Section 1.02 of the Listing of Impairments provides in relevant part:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity ... and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e ., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R., Part 404, Subpart P, Appendix 1 § 1.02.    Plaintiff bears the burden to demonstrate that she satisfies a Listing. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir. June 14, 2002). A review of the medical record reveals that Plaintiff cannot meet this burden.

The record shows that Plaintiff underwent a total left hip arthroplasty[2] on January 18, 2012 after being diagnosed with end stage arthritis of the left hip.  (PageID.358–61.)  The surgery apparently took place without complications, and on February 1, 2012, Plaintiff's pain and functional use were improving after the surgery.  Plaintiff used a walker as a walking aide.

---

[2]That is, a hip replacement surgery.  *Hip Replacement*, MAYO CLINIC (Apr. 29, 2014), http://www.mayoclinic.org/tests-procedures/hip-replacement-surgery/basics/definition/prc-2001 9151.

(PageID.588.)  On March 6, 2012, she was described as doing "reasonably well."  Her left hip was not irritable, but her right hip was "quite painful on range" of motion.  That hip was also indicative of end-stage arthritis, and additionally had a hip flexion contracture.  (PageID.393.)  Plaintiff subsequently underwent surgery to replace this hip.  (PageID.393, 590.)  On April 27, 2012, Plaintiff's pain and functional use was improving after surgery.  She again used a walker as a walking aid, and was weight bearing up to thirty pounds.  (PageID.598–99.)  On May 24, 2012, Plaintiff reported continued improvement.  She had increased her weight bearing to full while using her walker.  Her hip was stable and had a good range of motion.  Plaintiff stated she had no complaints of pain, was happy with her progress, and inquired into beginning physical therapy.  (PageID.600.)

Plaintiff apparently continued to improve until a July 3, 2012, checkup.  There, Plaintiff noted she had been in a car accident in June, and that her left hip felt "crackly."  (PageID.516.)  On July 12, 2012, Plaintiff stated that while her right hip was not bothering her, there was pain in her left leg, although on the day of the exam, neither hip was "overly irritable."  (PageID.603–04.)  On August 24, 2012, her right hip had a good range of motion and strength.  Plaintiff still experienced pain in her left leg, and an MRI was ordered.  (PageID.605.)  But on September 18, 2012, Plaintiff stated that she didn't follow up on the MRI because the pain had resolved.  (PageID.607.)  She also stated she had fallen two or three times in the last week, and complained of pain when raising her legs or trying to climb stairs.  During that visit, however, Plaintiff stated she was not in pain.  (PageID.607.)  On exam, both hips had a "good range of motion" and no corresponding pain.  (PageID.607.) Plaintiff was described as ambulating with a limp and using a cane, and was advised to go back to using the walker for stability.  (PageID.608.)

This was emphasized on September 20, 2012, when Plaintiff was told to use a walker "at all times." (PageID.843.) Plaintiff was referred to physical therapy for a gait analysis and hip strengthening. (PageID.608.) While there are not many notes from this therapy, it appears that Plaintiff experienced great improvement. At the beginning of therapy, a note described Plaintiff has having difficulty walking with a cane in her left hand. (PageID.629.) Her right hip had a flexion of 4+ and her left hip had flexion of 4-. She had "very weak gluteal muscles" which were "causing difficulty with gait and loss of balance." (PageID.629.) By October 9, 2012, Plaintiff had no pain and desired to defer any further evaluation. (PageID.611–12.) By November 6, 2012, Plaintiff was "doing well." Walking was improved and Plaintiff was walking without a cane around her house. (PageID.619.) On January 7, 2013, less than a year since her first hip replacement, Plaintiff was described as "ambulatory and able to get on the exam table without assistance." (PageID.861.)

After a review of the above, the Court concludes substantial evidence supports the ALJ's decision that Plaintiff did not satisfy the requirements of any listing. After surgery, Plaintiff had good range of motion in both hips. Moreover, the above does not support a conclusion that Plaintiff is unable to ambulate effectively. While it is certainly true that Plaintiff used a walker for a time after her surgery–as one would expect–it also appears Plaintiff transitioned away from the walker to the use of a cane and, thereafter used it only occasionally. Less than a year after her first surgery, Plaintiff was able to ambulate and get on an exam table without assistance. For these reasons, Plaintiff cannot demonstrate she meets Listing 1.02.

Plaintiff makes two additional arguments, none of which the Court finds persuasive. Plaintiff first argues the ALJ never considered her end stage arthritis of the right hip. (PageID.987.) The Court finds, however, the ALJ provided "sufficient factual findings" elsewhere in the opinion

regarding the right hip. *See Forrest*, 591 F. App'x at 366. The ALJ provided a detailed evaluation of both surgeries in his decision. (PageID.46.) And as the ALJ noted, Plaintiff's surgeries "were successful at alleviating pain." (PageID.46.) Moreover, as noted in the above discussion of the medical evidence, Plaintiff's complaints regarding her right hip after surgery generally related to her left hip, with only minimal complaints regarding the right. Accordingly this argument is rejected.

Plaintiff next claims the ALJ erred in failing to properly discuss whether she equaled a listing. Plaintiff's argument consists of one conclusory sentence. (PageID.986.) Statements such a this, which fail to cite any supporting legal authority do not suffice to bring a reviewable claim. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (*quoting McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); *accord Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) ("[Plaintiff develops no argument to support a remand, and thus the request is waived."). Even if Plaintiff had not waived this argument it would have failed. Plaintiff made no argument either at the hearing, or in her brief, that her impairments should be found equivalent to a listing. The claimant has a far less compelling claim where she presents no argument that she met or equaled the requirements of specific listings, then argues on appeal, with the benefit of hindsight, that the ALJ's opinion did not include a sufficiently detailed discussion of the most "closely analogous" listed impairments. *See Morris v. Barnhardt*, 223 F. App'x 465, 469 (6th Cir. 2007). For all the above reasons, Plaintiff's first claim of error is rejected.

## 2.    The ALJ Provided an Inadequate RFC Discussion.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. § 404.1545.  It is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis.  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  The ALJ's opinion clearly stated that he understood his obligation to "consider all of the claimant's impairments, including impairments that are not severe." (PageID.40.) Nonetheless, Plaintiff claims the ALJ failed to consider her lumbar and cervical degenerative disc disease impairments, hand tremors, and need for a cane.

### A.    Lumbar Spine

Plaintiff presents evidence that she underwent a semi-hemilaminectomy at L4-5 on her lumbar spine on December 30.  (PageID.448.)  An X-Ray taken after Plaintiff complained of leg pain on August 24, 2012 revealed that there was "quite a bit of lumbar spondylosis evident." (PageID.605.)   A subsequent MRI found a recent compression fracture at L1, mild degenerative spondylolisthesis at L4-5, with moderate spinal stenosis, and moderate degenerative spinal stenosis at L3-L4.  (PageID.614.)  Plaintiff claims that while the ALJ may have discussed the results of the MRI, he gave no serious discussion or consideration to this impairment.

The fact that the MRI showed "multilevel stenosis" and "foraminal encroachment" (PageID.611), however does not establish the extent of limitations, if any, caused by that condition. *See McKenzie v. Comm'r of Soc Sec.*, No. 99–3400, 2000 WL 687680, at *5 (6th Cir. May 19, 2000) ("the mere diagnosis of an impairment does not render an individual disabled nor does it reveal

anything about the limitations, if any, it imposes upon an individual") (*citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988)).  Plaintiff had the burden of showing specifically how her lumbar spine condition, in combination with other impairments, limited her ability to a degree inconsistent with the ALJ's RFC determination.  As all Plaintiff has done is show evidence of a condition, the Court finds Plaintiff has failed to satisfy her burden here.

### B.      Cervical Spine

The ALJ found that Plaintiff suffered from a severe impairment of degenerative disc disease of the cervical spine and reviewed this condition under Listing 1.04.  (PageID.40, 43.)  Plaintiff contends that the ALJ failed to acknowledge the seriousness of this condition in the RFC by failing to impose any upper extremity or neck motion restrictions and further erred in failing to provide any "serious discussion or consideration" of the impairment.  (PageID.986–87.)  In support of her claim, Plaintiff refers to two treatment notes by Dr. Krisi Demock in August and September of 2013, and an October 25, 2013 whole body assessment by Ms. Lynda Jansen, an assessment specialist at Northern Physical Therapy.

At an August 5, 2013, visit with Dr. Kristi Demock, Plaintiff complained of neck pain. (PageID.638.)  Plaintiff stated she had undergone two surgeries on her cervical spine, one in the 1980s and one in the 2000s, and that while she experienced relief from the first surgery, the second surgery had not helped.  (PageID.638.)  Plaintiff stated that her neck pain radiated to her arms, affecting the right side more.  Plaintiff also reported that the pain caused headaches and that the pain was affecting her sleep.  On exam, Plaintiff had a decreased range of motion of the cervical spine, both to the left and right.  (PageID.641.)  She also had a positive Spurling's test.[3]  Dr. Demock

---

[3] A positive Spurling's test suggests the presence of a cervical nerve root disorder. Thomas W. Woodward, M.D., and Thomas M. Best, M.D., Ph.D., *The Painful Shoulder: Part I Clinical*

discussed treatment options with the Plaintiff.  She noted that since the second surgery was not successful, she doubted a third would be.  The remaining options included physical therapy, pain injections, and medication.  Plaintiff was started on Cymbalta.  (PageID.641–42.)  On September 5, 2013, Plaintiff stated her neck pain, as well as her back and left hip pain, had improved since starting Cymbalta, but she still could not drive, nor could she turn her head due to pain. (PageID.653.)  Plaintiff further stated that sitting for more than an hour would cause neck pain that would radiate down her right arm.  Plaintiff was advised to discontinue over the counter medications, and instead was prescribed Neurontin in addition to the Cymbalta.  (PageID.656–57.) On October 25, 2013, Plaintiff underwent a whole body assessment at Northern Physical Therapy. Plaintiff "reported or demonstrated" a severely restricted range of motion regarding her neck and head on forward flexion, extension, right and left lateral flexion, and right and left rotation.  During the exam, Plaintiff stated she experienced "sharp pains going right up the back of [her] neck" and that she was "starting to get a headache."  (PageID.975.)  Ms. Jansen concluded that Plaintiff could never flex or rotate her head and neck. (PageID.972.).  Plaintiff argues the ALJ was required to include limitations regarding the movement of her head and neck in the RFC.

        In his RFC discussion, the ALJ did not discuss any of the above records from Dr. Demock, and gave only little weight to the assessment by Ms. Jansen after a short recitation of the specialist's findings.  The ALJ gave "great weight" to the opinion of Dr. Shahida Mohiuddin, M.D., a state agency physician who opined that Plaintiff had the RFC to stand and walk for two hours and sit for six hours with occasional postural limitations in the workday.  (PageID.110–11.)  The ALJ noted as an agency physician, Dr. Mohiuddin was a trained health professional and familiar with the

_____

*Evaluation*, AMERICAN FAMILY PHYSICIAN, May 15, 2000, available at, http://www.aafp.org/afp/20000515/3079.html.

disability process.  He also noted her opinion was consistent with the RFC.  Finally, the ALJ noted that Dr. Mohiuddin had reviewed the entire record.  (PageID.46.)  As the Plaintiff argues, and the Commissioner concedes, however, the ALJ erred by stating Dr. Mohiuddin had reviewed the entire record.  As the record makes clear, there are additional records dated through October 2013 that Dr. Mohiuddin did not review.

This situation calls for a meaningful explanation by the ALJ so that this Court can assess the ALJ's determination that Dr. Mohiuddin's opinions are consistent with, and supported by, the record as a whole.  It was, of course, not in error for the ALJ to give greater weight to Dr. Mohiuddin's opinion over that of Ms. Jansen who, as a physical therapist, was not an acceptable source.  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  However, there must be "some indication that the ALJ at least considered [the evidence not considered by Dr. Mohiuddin] before giving greater weight to an opinion that is not 'based on a review of a complete case record.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).  The Court concludes the ALJ did not provide such an indication here.  Indeed the ALJ's incorrect statement that Dr. Mohiuddin had reviewed the entire record points the other way.

The Court finds that the ALJ's decision does not provide a coherent discussion of Plaintiff's medical history subsequent to the initial denial of Plaintiff's claim in November 2012.  The Commissioner must provide a statement of evidence and reasons on which the decision is based.  *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534–35 (6th Cir. 2001), an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely

14

'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).  Here, the ALJ has failed to articulate an analysis of the evidence sufficient to allow a meaningful appellate review.

The Commissioner argues that the ALJ was entitled to rely on Dr. Mohiuddin's opinion not withstanding his error in claiming the doctor had reviewed the entire record. Additionally the Commissioner states any error is harmless, as Ms. Jansen found Plaintiff could sit at a computer for an hour without experiencing pain and such is indicative of being able to return to her past work. (1013–14.)  The Court is not persuaded, however, as neither consideration changes the Court's conclusion that the ALJ failed to articulate a sufficient analysis necessary for judicial review.  Accordingly this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the medical evidence, setting forth Plaintiff's medical history that includes the evidence after the initial denial of Plaintiff's claim, and explaining the medical evidence which supports his decision.

### C.    Hand Tremors

Plaintiff claims that the ALJ failed to include functional limitations regarding her hand tremors.  (PageID.987–88.)  Plaintiff points to two records, dated September 19, 2012, and January 7, 2013, in which Plaintiff's physicians noted Plaintiff had "notable tremors" in her arms and "some tremors" in her hands.  (PageID.607, 861.)  Plaintiff also points to the opinion from Ms. Jansen of Northern Physical Therapy, that stated Plaintiff could only minimally to occasionally use her hands for grasping.  (PageID.972.)  As regards the two treatment notes, Plaintiff's claim suffers

from the same flaw as her argument regarding her lumbar spine--the diagnosis of a condition says nothing about functional limitations. *McKenzi*, 2000 WL 587680, at *5**;** *see, e.g., Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[t]he mere diagnosis of arthritis, of course, says nothing about the severity of the condition"); *Foster*, 853 F.2d at 489 (a claimant diagnosed as suffering from dysthymic disorder must establish that the condition is disabling). Moreover, an ALJ is not required to discuss every treatment record. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) ("an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered"). Thus these records do not help satisfy Plaintiff's burden.

Finally, as noted above, Ms. Jansen is not an acceptable source. Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See* SSR 06-3p, 2006 WL 2329939, at *1 (Aug. 9, 2006); *see also Hickox v. Comm'r of Soc. Sec.*, No. 1:09-cv-343, 2011 WL 6000829, at *4 (W.D. Mich. Nov. 30, 2011). As an opinion from a  physical therapy specialist, Ms. Jansen qualifies as an "other source." As such, the ALJ was only required to "consider" this evidence. SSR 06-3p, 2006 WL 2329939, at *2, 6. This is not a demanding standard, and it was easily met here. Having found no error, Plaintiff's argument is rejected.

### D.    Cane

Finally, Plaintiff argues that it was "uncontradicted" that Plaintiff needed to use a cane to ambulate, and that the ALJ erred in failing to include a requirement stating as much in the RFC. (PageID.988.) The record does not support Plaintiff's claim.

SSR 96-9p governs under what circumstances an ALJ is required to include a limitation for a hand-held assistive device, such as a cane. In relevant part the ruling states:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). The evidence provided by Plaintiff does not demonstrate that a cane is medically required.

Plaintiff first points to a treatment record dated November 1, 2011, a date before Plaintiff's hip replacement surgeries. (PageID.576.) There, Dr. Bielema stated it was his "suggestion" that Plaintiff used a cane. But Dr. Bielema did not state it was required. Moreover, because the note predates Plaintiff's surgeries, it does not describe Plaintiff's condition after the hip replacements, and is accordingly of little value for present purposes. The other notes relied on by Plaintiff merely refer to observations that Plaintiff was using a cane, and do nothing to show that it was medically required. (PageID.607, 623, 629, 842.) Indeed, some records note that Plaintiff walked around at home without a cane, or only "occasionally" used a cane. (PageID.623, 653.) Plaintiff claimed in her function report that she was prescribed a cane in January 2012, but does not cite to that prescription, nor can the Court find one. (PageID.233.) Based on the above, the Court finds that the record does not contain substantial evidence demonstrating a need for an assistive device, and accordingly the ALJ had no need to account for the use of a cane.

17

### 3.      The ALJ Did Not Err in Addressing Plaintiff's Mental Limitations.

The ALJ concluded that Plaintiff had a "mild" limitation in concentration, persistence, or pace. (PageID.41.)  Relying on this finding, Plaintiff claims the ALJ erred in failing to account for this limitation in the RFC. (PageID.988–90.)  The Court disagrees.

The ALJ made this finding at step two of the sequential evaluation when he considered whether Plaintiff's affective disorder met the "paragraph B" requirements of various listed mental impairments. (PageID.41).  This finding was not the RFC finding made at step four of the evaluation. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (RFC is determined at step four of the sequential evaluation); 20 CFR Pt. 404, Subpt. P, App. 1, 12.00.A. ("RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder"). As the court explained in *Pinkard v. Comm'r of Soc. Sec.*, No. 1:13–cv–1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

> Plaintiff argues that the ALJ erred in concluding that Plaintiff had moderate difficulties in concentration, persistence, and pace, while failing to include an appropriate limitation for these difficulties in the RFC findings . . .  Plaintiff refers to the ALJ's paragraph B findings in his evaluation of Plaintiff's depression under 12.04 of the listing of impairments [ ]. 20 C.F.R. pt. 404, subpt. P, app. 1 Sections 12.04, 12.05, 12.06.  However, the ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00.  Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in

not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10.  Finally, the ALJ did in fact state that the RFC reflected "the degree of limitation" he found in the above analysis.  (PageID.42.)  This claim of error should be denied.

### 4.    Plaintiff Failed to Preserve Her Step Four Claim.

At step four, the ALJ determined that Plaintiff was capable of returning to her past relevant work as she actually performed it.[4]  (PageID.47.)  As noted above, the ALJ found that Plaintiff had the RFC for sedentary work.  Such work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *See* 20 C.FR. §§ 404.1567(b), 416.967(b).  At the hearing, Plaintiff testified that at her past work as a financial customer service representative, she did not have to lift anything over ten pounds, which would be consistent with her RFC.  (PageID.65.)  Plaintiff notes, however, that on a work function report, she reported that while she frequently lifted less than ten pounds, the heaviest weight she lifted was thirty to forty pound bags of money.  (PageID.219.)   On appeal, Plaintiff objects to the VE's opinion that she could return to her past relevant work because the inconsistency regarding the weight lifted had not been resolved.  (PageID.990–91.)  The Court disagrees.

Plaintiff's objections were not preserved at the administrative level.  The ALJ asked Plaintiff's counsel whether he had any questions for the VE, and counsel responded that he did not.  (PageID.88.)  "The Sixth Circuit, along with other courts across the country, have generally

---

[4]In this, the ALJ relied on the VE's testimony.  *See* 20 C.F.R. § 404.1560(b)(2) ("A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.")

recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Comm'r of Soc. Sec.*, No. 1:11–cv–1290, 2012 WL 4434078 at 3 (N.D. Ohio, Sept. 24, 2012), citing *Hammond v. Chater*, No. 96–3755, 1997 WL 338719 at *3 (6th Cir. June 18, 1997) (finding the plaintiff's failure to raise objections to the VE's testimony waived the argument on appeal). *See also Bechtold v. Massanari*, 152 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001) ("[Claimant], when squarely presented with an opportunity to object to the characterization by the administrative law judge of the nature of her past relevant employment, failed to do so. Such failure constitutes a waiver of her right to raise the argument before this Court at this time."); *cf. McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (stating that "counsel may not now complain" about the substance of the VE's testimony "because he failed to cross examine [the VE] when he had an opportunity to do so" at the administrative hearing). The Court finds Plaintiff has waived this claim.

### 5. Remand is Appropriate.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also, Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 644 (6th Cir. 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also, Brooks*, 531 F. App'x at 644. This case is being remanded because the ALJ failed to adequately articulate his analysis, not because there is compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further

administrative action.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further factual proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the medical evidence, setting forth Plaintiff's medical history that includes the evidence after the initial denial of Plaintiff's claim, and explaining the medical evidence that supports his decision.


Dated:  June 2, 2016                                   /s/ Janet T. Neff
                                                       JANET T. NEFF
                                                       United States District Judge